**UNITED STATES of America,
Appellee,**

v.

**Charles GAINES, Defendant-Appellant.**

**No. 725, Docket 35194.**

United States Court of Appeals,
Second Circuit.

Argued March 12, 1971.

Decided April 26, 1971.

John A. Lowe, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., William B. Gray, Asst. U. S. Atty., on the brief), for appellee.

Elliot A. Taikeff, New York City, for appellant.

Before HAYS and FEINBERG, Circuit Judges, and CURTIN, District Judge.*

HAYS, Circuit Judge:

This is an appeal from a judgment of conviction entered in the United States District Court for the Southern District of New York on two counts of unlawful uttering and possession of counterfeit federal reserve notes in violation of 18 U.S.C. § 472 (1964). Before the trial, a motion to suppress evidence consisting of two counterfeit bills was denied after a hearing. Again at the trial, the defense objected to the introduction of the counterfeit bills and renewed its motion to suppress before the case was submitted to the jury. The motion was again denied. Gaines was sentenced to four years imprisonment on each count, the sentences to run concurrently.

The sole issue presented on appeal is whether the counterfeit bills which were found in Gaines' jacket pocket were properly introduced against him. Since we find that Gaines consented to the search which produced the bills, we affirm the judgment of conviction.

Acting upon the basis of a report that Gaines had passed counterfeit bills, three New York City detectives and Secret Service Agent Derkasch went to Gaines' apartment. Although they had no arrest or search warrant, it is not contested on appeal that the officers had probable cause to make an arrest of Gaines. They knocked on the door and identified themselves, and one of the detectives produced his badge through the peephole. After waiting five minutes, one of the detectives kicked down the door, and all four men entered the apartment. One of the detectives identified himself to Gaines, who was standing in the living room, and informed him of the complaint that had been made against him. At this point Der-

---

* Of the United States District Court for the Western District of New York, sitting by designation.

kasch identified himself and asked Gaines for identification. Gaines pointed to a jacket approximately ten feet away on a coat rack in the bedroom and said "It is in my jacket." The jacket was clearly visible from the point where Gaines and Derkasch were standing. Reaching into a pocket of the jacket Derkasch first discovered the two counterfeit bills. He found Gaines' identification cards in another pocket.

On the basis of this evidence we hold that Gaines consented to the search which produced the two counterfeit bills. Although consent to a search should not be inferred lightly, United States ex rel. Lundergan v. McMann, 417 F.2d 519, 521 (2d Cir. 1969); United States v. Como, 340 F.2d 891, 893 (2d Cir. 1965); United States v. Viale, 312 F.2d 595, 601 (2d Cir.), cert. denied, 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963), still "the search and seizure in each case must stand or fall on its own special facts," United States v. Dornblut, 261 F.2d 949, 950 (2d Cir. 1958), cert. denied, 360 U.S. 912, 79 S.Ct. 1298, 3 L.Ed.2d 1262 (1959). The facts of the present case show a consent which was "unequivocal, specific, and intelligently given." United States v. Smith, 308 F.2d 657, 663 (2d Cir. 1962), cert. denied, 372 U.S. 906, 83 S.Ct. 717, 9 L.Ed.2d 716 (1963). The evidence establishes that Gaines, in answer to the request for identification, pointed to his jacket and said that the identification could be found in it. In doing so he authorized Agent Derkasch to search the jacket for the requested identification. The discovery of the counterfeit bills was incidental to this authorized search. Gaines "need not have had a positive desire that the search be conducted in order for his consent to have been voluntary and effective." United States v. Thompson, 356 F.2d 216, 220 (2d Cir. 1965), cert. denied, 384 U.S. 964, 86 S.Ct. 1591, 16 L.Ed.2d 675 (1966). The facts in the case at bar are similar to those in Gladden v. Frazier, 388 F.2d 777, 783 (9th Cir. 1968), aff'd sub nom. Frazier v. Culp, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), where the search was held to have been based on consent.

In any event "the finding whether the consent was voluntarily given is a finding of fact that should not be lightly overturned by the appellate court." United States v. Bracer, 342 F.2d 522, 524 (2d Cir.), cert. denied, 382 U.S. 954, 86 S.Ct. 427, 15 L.Ed.2d 359 (1965); United States v. Cachoian, 364 F.2d 291, 292 (2d Cir. 1966), cert. denied, 385 U.S. 1029, 87 S.Ct. 757, 17 L.Ed.2d 676 (1967). The trial court found that the government met its admittedly heavy burden of proving that Gaines consented to the search and we have no reason to disagree. See United States v. Jordan, 399 F.2d 610, 614 (2d Cir.), cert. denied, 393 U.S. 1005, 89 S.Ct. 496, 21 L.Ed.2d 469 (1968). Not only is this finding not "clearly erroneous * * * [but] it is reasonable and logical in the light of the evidence." United States v. Curiale, 414 F.2d 744, 748 (2d Cir.), cert. denied, 396 U.S. 959, 90 S.Ct. 433, 24 L.Ed.2d 424 (1960).

We therefore affirm appellant's conviction.